# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## Case No. 17-cv-61184-BLOOM/Valle

JEFFREY C. PRESSER,

      Plaintiff,

v.

UNION SECURITY INSURANCE COMPANY,

      Defendant.

v.

CLIFFORD D. ISADORE,

      Third-Party Defendant

_____/

## ORDER

**THIS CAUSE** is before the Court upon Third-Party Defendant Clifford D. Isadore's ("Mr. Isadore" or "Third-Party Defendant") Motion to Dismiss Third-Party Complaint, or in the Alternative Motion to Transfer Venue, and Motion to Strike Request for Attorney's Fees, ECF No. [16] (the "Motion"). The Court has reviewed the Motion, all opposing and supporting submissions, the record and the applicable law, and is otherwise fully advised. For the reasons set forth below, Mr. Isadore's Motion is denied.

## I.     BACKGROUND

This action centers around a life insurance policy (Policy No. G-5460411, or the "Policy"), *see* ECF No. [3-1], Exh. A, issued by Defendant Union Security Insurance Company ("Union Security") and insuring the life of Tammy Isadore-Presser (the "Decedent"). The Decedent received life insurance coverage under the Policy pursuant to an employee welfare benefits plan provided through her employer, United Capital Financial Advisers, LLC, and

governed by the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001, *et seq.* ("ERISA"). *See* ECF No. [3-1] at ¶ 5. At the time of enrollment, the Decedent named her husband, Plaintiff Jeffrey C. Presser ("Mr. Presser")—who resides in south Florida—as the sole beneficiary under the Policy. *Id.* at ¶ 10.

The Decedent was diagnosed with cancer in September of 2013, and she and Mr. Presser separated the following month. *See id.* at ¶ 13; ECF No. [6] at 7, ¶ 11. On March 6, 2014, the Decedent executed a Durable Power of Attorney ("POA") naming Mr. Isadore, her father—who resides in Minnesota—as her attorney-in-fact. ECF No. [3-1] at ¶ 15. Pursuant to the POA, Mr. Isadore executed a Beneficiary Designation on March 10, 2014, naming himself as the sole beneficiary under the Policy. *Id.* at ¶ 17. Shortly thereafter, on March 16, 2014, the Decedent died due to her illness. *Id.* at ¶ 14. At the time of her death, the Policy provided a death benefit of $100,000. ECF No. [6] at 9, ¶ 17.

On April 30, 2014, Mr. Isadore submitted a claim for the Policy's death benefit. *Id.* at 9, ¶ 18. On May 13, 2014, Union Security paid the death benefit to Mr. Isadore—a decision which Union Security claims was based on the belief that the POA was properly executed and authorized Mr. Isadore to name himself as the beneficiary under the Policy. *See id.* at 9, ¶ 19. Some time thereafter, Union Security denied a claim for the Policy's death benefit made by Mr. Presser, and Union Security affirmed that denial on appeal. *See id.* at 9, ¶¶ 20-21.

On March 28, 2017, Mr. Presser initiated the instant action against Union Security in the Circuit Court of the Seventeen Judicial Circuit in and for Broward County, Florida, asserting a claim under 29 U.S.C. § 1132 to recover the Policy's death benefit. *See* ECF No. [3-1]. Mr. Presser claims that he was wrongfully denied the death benefit because "the Durable Power of Attorney was allegedly signed when [the Decedent's] mental capacity was subject to question

because of the advanced stage of her fatal illness" and because Mr. Isadore allegedly exceeded his authority as the attorney-in-fact under the POA by naming himself as the Policy's beneficiary. *See id.* at ¶ 22. On June 13, 2017, Union Security filed a timely Notice of Removal based on federal question jurisdiction pursuant to 28 U.S.C. § 1331, as well as diversity jurisdiction pursuant to 28 U.S.C. § 1332. ECF No. [1]; *see also* ECF No. [3] (Union Security's Corrected Notice of Removal). On June 20, 2017, Union Security filed its Answer and Defenses to Complaint and Third-Party Complaint in Interpleader, naming Mr. Isadore as a Third-Party Defendant in this case. ECF No. [6] ("Third-Party Complaint"). Through its Third-Party Complaint, Union Security seeks equitable relief pursuant to 29 U.S.C. § 1132(a)(3), specifically requesting that the Court impose a constructive trust or equitable lien on the Policy's death benefits "in the event that it is determined that Union Security is liable for wrongfully denying payment of the Death Benefit to Mr. Presser pursuant to 29 U.S.C. § 1132(a)(1)(B)." *Id.* at 10-11. Union Security also seeks an award of attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g). *Id.* at 11.

In the instant Motion, Mr. Isadore—who was served in Minnesota—raises two main arguments: (1) this Court does not have personal jurisdiction over him; and (2) venue is not proper in this district. *See* ECF No. [16]. As such, Mr. Isadore requests that the Court dismiss the Third-Party Complaint or, alternatively, transfer it to the appropriate venue. *See id.* at 3. In addition, Mr. Isadore argues that Union Security's request for attorneys' fees is improper and should be stricken in the event that the Third-Party Complaint is not dismissed or is transferred. *See id.* at 11-12.

## II.    LEGAL STANDARDS

### A.  Personal Jurisdiction

On a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing a *prima facie* case of personal jurisdiction. *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006). The district court must accept the facts alleged in the complaint as true to the extent they are uncontroverted by the defendant's affidavits. *S & Davis Int'l, Inc. v. Republic of Yemen*, 218 F.3d 1292, 1303 (11th Cir. 2000). If the defendant sustains its burden of challenging the plaintiff's allegations through affidavits or other competent evidence, the plaintiff must substantiate the jurisdictional allegations in the complaint with evidence of its own. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). Where the evidence conflicts, the district court must construe all reasonable inferences in favor of the plaintiff. *See PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 810 (11th Cir. 2010).

In analyzing a motion to dismiss under Rule 12(b)(2), a court must "first determine whether the applicable statute potentially confers jurisdiction over the defendant, and then determine whether the exercise of jurisdiction comports with due process." *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997) (internal citations omitted). Regarding the first step, when a governing federal statute provides for nationwide service of process, such as in this case, that federal statute "becomes the statutory basis for personal jurisdiction."[1] *Id.* (citing *In re Chase & Sanborn*, 835 F.2d 1341, 1344 (11th Cir.

---

[1] ERISA's service of process provision provides that "process may be served in any other district where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). "This broadly worded language is appropriately classified as a nationwide service of process provision." *Caudle v. Life Ins. Co. of N. Am.*, 33 F. Supp. 3d 1288, 1292 n.2 (N.D. Ala. 2014).

1988), *rev'd on other grounds sub. nom*, *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989)).

In such cases, it is a "well settled principle that service of process constitutes the vehicle by

which the court obtains jurisdiction." *SEC v. Carrillo*, 115 F.3d 1540, 1543 (11th Cir. 1997)

(citation and internal quotation marks omitted). As to the second step—"the constitutional

question"—"when . . . a federal statute provides the basis for jurisdiction, the constitutional

limits of due process derive from the Fifth, rather than the Fourteenth, Amendment." *Id.* at 946

(citing *In re Chase & Sanborn*, 835 F.2d at 1344). The distinction is important, as "[t]he due

process concerns of the fifth and fourteenth amendments are not precisely parallel."). *Id.*

(quoting *In re Chase & Sanborn*, 835 F.2d at 1345 n.9) (internal quotation marks omitted)

(alteration in original). As the Eleventh Circuit has explained:

> [A] defendant's contacts with the forum state play no magical role in the Fifth Amendment analysis. "As a practical matter . . . state lines cannot provide an accurate measure of the burdens that would be imposed on a defendant by requiring him to defend an action in a particular forum. There is nothing inherently burdensome about crossing a state line." Wright & Miller, *supra*, § 1067.1, at 327. Thus, determining whether litigation imposes an undue burden on a litigant cannot be determined by evaluating only a defendant's contacts with the forum state. *A court must therefore examine a defendant's aggregate contacts with the nation as a whole rather than his contacts with the forum state in conducting the Fifth Amendment analysis. See United States Securities and Exchange Comm'n v. Carrillo*, 115 F.3d 1540, 1543–44 (11th Cir.1997).
>
> A defendant's "minimum contacts" with the United States do not, however, automatically satisfy the due process requirements of the Fifth Amendment. There are circumstances, *although rare*, in which a defendant may have sufficient contacts with the United States as a whole but still will be unduly burdened by the assertion of jurisdiction in a faraway and inconvenient forum.

*Id.* at 946-47 (footnotes omitted) (emphasis added). That said, "it is only in *highly unusual cases*

that inconvenience will rise to a level of constitutional concern." *Id.* at 947 (emphasis added).

"The burden is on the defendant to demonstrate that the assertion of jurisdiction in the

forum will make litigation so gravely difficult and inconvenient that [he] unfairly is at a severe

disadvantage in comparison to his opponent." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)) (alteration in original) (internal quotation marks omitted). "In those unusual instances in which 'a defendant makes a showing of constitutionally significant inconvenience, jurisdiction will comport with due process only if the federal interest in litigating the dispute in the chosen forum outweighs the burden imposed on the defendant.'" *Caudle*, 33 F. Supp. 3d at 1293 (quoting *BCCI*, 119 F.3d at 948).

### B. Improper Venue under Rule 12(b)(3)

When a defendant objects to venue under Rule 12(b)(3), the plaintiff bears the burden of showing that the venue selected is proper. *See Delong Equip. Co. v. Wash. Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1988) (explaining that the plaintiff must make "only a prima facie showing of venue"); *BP Prods. N. Am., Inc. v. Super Stop 79, Inc.*, 464 F. Supp. 2d 1253, 1256 (S.D. Fla. 2006). "The facts as alleged in the complaint are taken as true, to the extent they are uncontroverted by defendants' affidavits." *Delong*, 840 F.2d at 845. The court may also consider facts outside the complaint to determine whether venue is proper. *See Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004). In examining the record, the court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff. *Id.*

Generally, venue in federal civil actions is governed by 28 U.S.C. § 1391. "Pursuant to § 1391(b), venue is proper in: (1) a judicial district in which any defendant resides, if all defendants are residents of the state in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." *TMJ*

*Practice Mgmt. Assocs., Inc. v. Curran*, 2017 WL 3130421, at *3 (S.D. Fla. July 24, 2017). If venue is improper, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

"[A]cknowledging that venue may be proper in two or more districts, the Eleventh Circuit has stated that 'only the events that directly give rise to a claim are relevant' and that 'of the places where the events have taken place, only those locations hosting a 'substantial part' of the events are to be considered.'" *TMJ*, 2017 WL 3130421, at *3 (quoting *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003)) (footnote omitted). "[O]nly those acts and omissions that have a close nexus to the wrong" are relevant in the venue analysis. *Jenkins*, 321 F.3d at 1372. In conducting this analysis, "the proper focus of the venue inquiry is on the relevant activities of the Defendants." *Hemispherx Biopharma, Inc. v. MidSouth Capital, Inc.*, 669 F. Supp. 2d 1353, 1357 (S.D. Fla. 2009); *see also TMJ*, 2017 WL 3130421, at *3 n.2 ("[I]n accordance with Eleventh Circuit precedent, the Court must focus its venue analysis not on all aspects of the relationships between the parties, but on the location of the acts and omissions giving rise to the claims asserted, those actions with a close nexus to the wrong.").

### C. Transfer of Venue under 28 U.S.C. § 1404(a)

Section 1404(a) of Title 28 of the United States Code embodies a codification and revision of the *forum non conveniens* doctrine, *see Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253 (1981), and it provides in relevant part that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a); *see also Carucel Investments, L.P. v. Novatel Wireless, Inc.*, 157 F. Supp. 3d 1219, 1222-23 (S.D. Fla. 2016) ("Section 1404(a) reflects an increased desire to have federal civil suits tried in the federal

system at the place called for in the particular case by considerations of convenience and justice.") (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)). "The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) (citation omitted). "[T]he burden is on the movant to establish that the suggested forum is more convenient." *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989).

## III. DISCUSSION

### A. The Court has Personal Jurisdiction over Mr. Isadore

As mentioned, 29 U.S.C. § 1132(e)(2), ERISA's service of process provision, provides for nationwide service of process. *See* Note 1, *supra*. Because Mr. Isadore was served within the United States—namely, Minnesota—29 U.S.C. § 1132(e)(2) constitutes "the statutory basis for personal jurisdiction" over Mr. Isadore in this case. *BCCI*, 119 F.3d at 942. Thus, as explained by the Eleventh Circuit in *BCCI*, the relevant initial inquiry concerns Mr. Isadore's "aggregate contacts with the nation as a whole rather than his contacts with the forum state." *Id.* at 947; *see also id.* at 948 ("[D]efendants are large corporations providing banking services to customers in major metropolitan areas along the eastern seaboard [and,] [t]he fact that they may not have had significant contacts with Florida is insufficient to render Florida an unreasonably inconvenient forum."); *Kammona v. Onteco Corp.*, 587 F. App'x 575, 580 (11th Cir. 2014) (finding that the district court "incorrectly analyzed [the defendant's] minimum contacts in the context of the forum state of Florida, as opposed to its contacts with the United States as a whole" where the defendant was served pursuant to a federal statute authorizing nationwide service of process); *Waeltz v. Delta Pilots Retirement Plan*, 301 F.3d 804, 808 (7th Cir. 2002)

("Section 1132(e)(2) provides for nationwide service of process that simply requires minimum contacts with the United States as a whole.").

Turning to that inquiry, it is clear that Mr. Isadore has sufficient contacts with the United States as a whole—his purported lack of contacts with Florida notwithstanding. *See generally Caudle*, 33 F. Supp. 3d at 1298 ("None of the evidence presented by Cigna conforms to this Fifth Amendment framework. Rather, Cigna offers only proof related to its lack of contacts with Alabama, but this type of evidence is essentially meaningless when the federal statute bestowing this court with federal question jurisdiction contains a nationwide service of process provision, such as ERISA does.") (citing *Gulf Life Ins. Co. v. Arnold*, 809 F.2d 1520, 1522–23 (11th Cir.1987)). Specifically, as reflected by the Complaint, the Third-Party Complaint, and the documents attached thereto, Mr. Isadore allegedly did all of the following within the United States: he signed the POA; he executed the Beneficiary Designation that named himself as the Policy's beneficiary; he submitted a claim to Union Security for the Policy's death benefit; and finally, he received the Policy's death benefit. These allegations establish that Mr. Isadore's relevant contacts with the United States are related to Union Security's claim against him, involve actions by him that evince his purposeful availment of the privileges of conducting activities within the United States, and are such that he should reasonably anticipate being haled into court in the United States. *See Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534, 1546 (11th Cir. 1993) (providing that the above mentioned factors are the three criteria required to "constitute constitutionally minimum contacts").

Given his sufficient contacts with the nation as a whole, the burden is on Mr. Isadore to demonstrate "constitutionally significant inconvenience[.]" *BCCI*, 119 F.3d at 948; *see also U.S. S.E.C. v. Carrillo*, 115 F.3d 1540, 1547 (11th Cir. 1997) (explaining that after a finding of

sufficient minimum contacts, a court must examine "the burden on the defendant, the interests of the forum …, and the plaintiff's interest in obtaining relief" in determining whether exercising jurisdiction will offend traditional notions of fair play and substantial justice) (quoting *Vermeulen*, 985 F.2d 1551).  Mr. Isadore has failed to meet that burden.  First, the focus of Mr. Isadore's Motion is on Mr. Isadore's purported lack of contacts with Florida.  *See* ECF No. [16] at 3, 6; *see also Caudle*, 33 F. Supp. 3d at 1298-99 ("Cigna has failed to . . . explain[] why Cigna's lack of contacts with the forum state should even factor into the analysis when the *BCCI* binding precedent from the Eleventh Circuit under a federal statute incorporating a comparable nationwide service of process provision holds otherwise. Instead, Cigna continues to mistakenly rely upon the personal jurisdiction standard applicable in diversity cases.").  Further, other than this misplaced focus, Mr. Isadore offers only conclusory statements that the assertion of this Court's jurisdiction over him "will impose a significant hardship" and that "[t]he burden [] of defending suit in South Florida—nearly 2,000 miles from his residence—would be more than minimal."  ECF No. [16] at 6.  This is not enough to establish constitutionally significant inconvenience.  *See, e.g.*, *H.E.R.O., Inc. v. Self*, 2012 WL 1802431, at *6 (S.D. Fla. May 17, 2012) ("[G]eneralized inconvenience of litigating in a foreign forum is typically not sufficient to establish that the exercise of jurisdiction is constitutionally unreasonable.") (quoting *Savage Universal Corp. v. Grazier Const., Inc.*, 2004 WL 1824102, at *11 (S.D.N.Y. Aug. 13, 2004)); *Grail Semiconductor, Inc. v. Stern*, 2012 WL 5903817, at *5 (S.D. Fla. Nov. 26, 2012) (rejecting a California defendant's arguments that litigation in Florida would be unconstitutionally burdensome because they relied on "mere conclusions [which] do not furnish the Court with anything substantive that would show why or how the burden on [the defendant] would be of constitutional concern"); *Long v. Sports44.com, Inc.*, 2007 WL 3072405, at *5 (M.D. Fla. Oct.

19, 2007) ("While it can be inferred that there would be some inconvenience to the defendant from proceeding in this district, rather than in the defendant's home area of Michigan, that inconvenience falls far short of the unfair inconvenience the Eleventh Circuit requires in order to have a constitutional violation."); *see also BCCI*, 119 F.3d at 947-48 (explaining that "[m]odern means of communication and transportation have lessened the burden of defending a lawsuit in a distant forum" and that "due process protections against inconvenient litigation have been substantially relaxed") (citing *In re Chase & Sanborn*, 835 F.2d at 1346, and *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 292-93 (1980)). Because Mr. Isadore has not demonstrated any constitutionally significant inconvenience that would result from the Court's exercise of jurisdiction over him, the Court "find[s] no infringement of [his] individual liberty interests protected by the Due Process Clause of the Fifth Amendment." *BCCI*, 119 F.3d at 948. The Court therefore "need not balance the federal interests at stake in this lawsuit." *Id.*

For the reasons outlined above, the Court finds that it has personal jurisdiction over Mr. Isadore. Mr. Isadore's request that the Third-Party Complaint be dismissed on account of a lack of such jurisdiction is denied.

## B. Venue is Proper in this District

ERISA's venue provision, found under the same subsection as ERISA's service of process provision, provides in relevant part as follows: "Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, *where the breach took place*, or where a defendant resides or may be found[.] . . ." 29 U.S.C. § 1132(e) (emphasis added). According to Mr. Isadore, this provision "identifies only three possibilities for proper venue"—none of which applies here, he contends—and so "the

Southern District of Florida [is] an improper venue for this action." ECF No. [16] at 7. The Court is not persuaded.

Contrary to Mr. Isadore's position, "the vast majority of district courts . . . have concluded that, in ERISA cases involving the denial of benefits, venue under 29 U.S.C. § 1132(e)(2) is appropriate where the beneficiary was supposed to receive his benefits, i.e., his residence." *Roshinsky v. Reynolds*, 2008 WL 2827528, at *3 (W.D.N.Y. July 21, 2008) (collecting cases). In other words, it is the location where an ERISA plan beneficiary is to receive his or her benefits that the breach is considered to have taken place. *See, e.g.*, *Coulter v. Office and Prof'l Employees Intern. Union*, 2003 WL 21938910 at *3 (E.D. Tenn. Jun. 10, 2003) ("[W]here a plaintiff claims that failure to pay a benefit breaches the terms of an ERISA plan, the alleged breach is deemed, for purposes of venue under § 1132(e)(2), to have occurred in the place where the plaintiff receives his or her benefits."); *Schrader v. Trucking Employees of North Jersey Welfare Fund, Inc.*, 232 F. Supp. 2d 560, 573 (M.D.N.C. 2002) ("The Court notes that with respect to cases brought pursuant to ERISA, the alleged breach is considered to have occurred in the district where the beneficiary receives his benefits."); *McFarland v. Yegen*, 699 F. Supp. 10, 13 (D.N.H. 1988) ("Where [ERISA] plan beneficiaries are denied what they are due, the breach may well occur where the beneficiaries were to receive those benefits."); *Palka v. Theodore M. Hylwa, M.D., Inc.*, 1986 WL 22380 at *2 (D. Kan. Sep. 3, 1986) ("Since the plaintiff in this action would be entitled to payment at his residence in the District of Kansas, venue lies with this court under this portion of 29 U.S.C. § 1132(e).").

Here, the linchpin of the theory of liability asserted in Union Security's Third-Party Complaint is that the proper beneficiary of the Policy may be Mr. Presser—as claimed in Mr. Presser's Complaint. *See* ECF Nos. [3-1], [6]. Pursuant to both the Complaint and the Third-

Party Complaint, then, but for the alleged misconduct of Union Security and Mr. Isadore, Mr. Presser would have received the Policy's death benefit in the Southern District of Florida, where he resides. Consequently, insofar as this district is where Mr. Presser would have received the Policy's death benefit that he claims has been wrongfully denied to him, venue here is appropriate pursuant to 29 U.S.C. § 1132(e)(2).[2] *See Roshinsky*, 2008 WL 2827528, at *3 ("[V]enue in the Western District of New York is appropriate, since this is where the alleged breach took place, inasmuch as this is the situs at which Plaintiff has historically received the benefits that he now claims are being denied him."). Mr. Isadore's request that the Third-Party Complaint be dismissed for improper venue is denied.

---

[2] It is also worth noting that Mr. Isadore's narrow reading of ERISA's venue provision is inaccurate. The use of the word "may" in that provision reflects that the three locations enumerated thereunder do not represent an exhaustive list of appropriate venue locations. *See Varsic v. U.S. Dist. Court for Cent. Dist. of Cal.*, 607 F.2d 245, 248 (9th Cir. 1979) ("The ERISA venue provision is intended to expand, rather than restrict, the range of permissible venue locations."); 14D Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3825 (4th ed.) ("The ERISA venue provision is not exclusive."). Rather, as explained by a court in the Northern District of Indiana, a plaintiff "may demonstrate proper venue under ERISA's venue provision, 29 U.S.C. § 1132(e)(2), *or under the federal venue statute, 28 U.S.C. § 1391(b)*." *Macdonald v. Assocs. for Restorative Dentistry Ltd. Pension Plan*, 2016 WL 4506872, at *2 (N.D. Ind. Aug. 29, 2016) (emphasis added); *see also White v. Airline Pilots Ass'n, Int'l*, 364 F. Supp. 2d 747, 759 (N.D. Ill. 2005) (concluding that venue in the ERISA suit was properly placed "pursuant to 29 U.S.C. § 1132(e)(2) *and 28 U.S.C. § 1391*") (emphasis added); *UNUM Life Ins. Co. v. Am. v. Narut*, 363 F. Supp. 2d 1063, 1068 (E.D. Wis. 2005) (same); *Trigon Ins. Co. v. Columbia Naples Capital, LLC*, 235 F. Supp. 2d 495 (E.D. Va. 2002) (same). As mentioned, under the federal venue statute, venue is proper in a district: (1) "in which any defendant resides, if all defendants reside" in the same State; (2) "in which a substantial part of the events or omissions giving rise to the claim occurred"; or (3) if neither of the above apply, then "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b). Mr. Isadore makes no argument as to why venue in this district would not be proper under the federal venue statute. In any event, given that, for purposes of ERISA, the alleged breach by Union Security is considered to have occurred in this district, it would appear that "a substantial part of the events or omissions giving rise to the [third-party] claim occurred" in this district, rendering venue here appropriate pursuant to 28 U.S.C. § 1391(b)(2) as well. *See generally Morgan v. N. MS Med. Ctr., Inc.*, 403 F. Supp. 2d 1115, 1122 (S.D. Ala. 2005), *aff'd sub nom. Morgan v. N. Mississippi Med. Ctr., Inc.*, 225 F. App'x 828 (11th Cir. 2007) ("[U]nder § 1391 a plaintiff does not have to select the venue with the most substantial nexus to the dispute, as long as she chooses a venue where a substantial part of the events giving rise to the claim occurred.").

### C. Transfer of Venue is Not Warranted

As an alternative to dismissal, Mr. Isadore requests that venue be transferred to an appropriate district court in Minnesota. *See* ECF No. [16] at 8-9. However, Mr. Isadore has fallen woefully short of meeting his burden in establishing that the forum he suggests better serves the parties' convenience and the interests of justice. *See* 28 U.S.C. § 1404(a). Instead, Mr. Isadore simply asserts that "the Court should transfer . . . pursuant to 29 [sic] U.S.C. section[] 1404" without offering any argument or explanation in support. ECF No. [16] at 8-9.[3] Moreover, the Court agrees with Union Security that the interests of equity and judicial efficiency are promoted by allowing Union Security's third-party claim against Mr. Isadore to proceed in this district as a part of this action. *See Hecht v. Summerlin Life & Health Ins. Co.*, 536 F. Supp. 2d 1236, 1241 (D. Nev. 2008) ("The costs and pitfalls associated with litigating multiple suits on the same subject matter, and the attendant possibility of inconsistent verdicts, are not insubstantial or abstract."). Rule 14(a), which governs third-party practice, "is, in effect, a recognition that where procedurally it is possible to bring all related liability and indemnity or contribution claims in a single action, the interests involved are sufficiently concrete to permit accelerated adjudication of the inchoate claims." *Id.* Accordingly, Mr. Isadore's request that the Third-Party Complaint be transferred to another venue is denied.

### D. There is no Basis for Striking Union Security's Request for Attorneys' Fees

Finally, Mr. Isadore contends that Union Security's request for attorneys' fees should be stricken from the Third-Party Complaint as improper. However, Mr. Isadore's contention is undercut by 29 U.S.C. § 1132(g), "which vests *discretionary authority* in a district court to

---

[3] Mr. Isadore also moves for transfer pursuant to 28 U.S.C. § 1406(a), which allows for a district court's discretion in either dismissing a case or transferring venue *when venue is improper*. *See* 28 U.S.C. § 1406(a). But as already explained, venue in the Southern District of Florida is proper, and so 28 U.S.C. § 1406(a) is inapplicable here.

'allow a reasonable attorney's fee and costs of action to either party." *Lake v. Hartford Life & Accident Ins. Co.*, 2004 WL 1253784, at *1 (M.D. Fla. Jan. 30, 2004) (quoting 29 U.S.C. § 1132(g)) (emphasis added). Mr. Isadore nevertheless cites to the several factors a court is instructed to consider "[i]n determining whether to award fees and costs," *id.*, arguing in conclusory fashion that Union Security's request for attorneys' fees "fails against these standards," ECF No. [16] at 11. As an example, a court is to consider "the degree of the opposing party's culpability or bad faith" when determining whether to award fees and costs. *Lake*, 2004 WL 1253784, at *1 (citing *Dixon v. Seafarers' Welfare Plan*, 878 F.2d 1411, 1412 (11th Cir. 1989)). However, such a consideration, like Mr. Isadore's argument generally, speaks to what is ultimately a disputed question of fact as well as the merits of Union Security's request for attorneys' fees. The Court declines to engage in such considerations at this early stage of the proceedings. *See generally Augustus v. Bd. of Pub. Instruction of Escambia Cty., Fla.*, 306 F.2d 862, 868 (5th Cir. 1962) ("A disputed question of fact cannot be decided on [a] motion to strike. It is true, also, that when there is no showing of prejudicial harm to the moving party, the courts generally are not willing to determine disputed and substantial questions of law upon a motion to strike. Under such circumstances, the court may properly, and we think should, defer action on the motion and leave the sufficiency of the allegations for determination on the merits.") (footnotes omitted).[4] Mr. Isadore's request that Union Security's claim for attorneys' fees be stricken is denied.

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the Fifth Circuit issued prior to October 1, 1981.

IV.     **CONCLUSION**

For all of the reasons stated herein, it is **ORDERED AND ADJUDGED** as follows:

1.  Third-Party Defendant Clifford Isadore's Motion to Dismiss Third-Party Complaint, or in the Alternative Motion to Transfer Venue, and Motion to Strike Request for Attorney's Fees, **ECF No. [16]**, is **DENIED**.

2.  Third-Party Defendant Clifford Isadore shall respond to the Third-Party Complaint by **October 16, 2017**.

**DONE AND ORDERED** in Miami, Florida this 6th day of October, 2017.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record